UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD MYERS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:19-cv-10010-ADB |
| | * | |
| COMMISSIONER OF SOCIAL SECURITY, | * | |
| | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Richard Myers ("Myers") brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Social Security Disability Insurance ("SSDI") benefits. Presently before the Court are Myers' motion to reverse the Commissioner's decision denying his disability benefits, [ECF No. 11], and the Commissioner's cross-motion for an order affirming the decision, [ECF No. 13]. For the reasons described herein, the Court finds that the Administrative Law Judge's decision was supported by substantial evidence. Myers' motion to reverse and remand, [ECF No. 11], is therefore <u>DENIED</u> and the Commissioner's motion to affirm, [ECF No. 13], is <u>GRANTED</u>.

**I.     BACKGROUND**

    **A.     Statutory and Regulatory Framework: Five-Step Process to Evaluate Disability Claims**

"The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income program, which provides assistance for

the indigent aged and disabled." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

The Social Security Act (the "Act") provides that an individual shall be considered to be "disabled" if he or she is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A). The disability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

When evaluating a disability claim under the Act, the Commissioner uses a five-step process. "All five steps are not applied to every applicant, as the determination may be concluded at any step along the process." Seavey, 276 F.3d at 5. The First Circuit has explained the process as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Id. (citing 20 C.F.R. § 416.920).

**B.     Procedural Background**

Myers filed his application for SSDI benefits on September 30, 2015. [R. 218].[1] He alleged that he became disabled on June 17, 2015, due to a shoulder injury sustained at work, which also aggravated a neck and bicep injury from a 2008 car crash. [R. 244]. He was last insured on March 31, 2017. [R. 25].

The Social Security Administration (the "SSA") denied Myers' applications for SSI and SSDI benefits on February 12, 2016, and again upon reconsideration on April 12, 2016. [R. 24]. Thereafter, Myers requested an administrative hearing, [R. 158], which took place on July 25, 2017, [R. 51]. Myers, who was represented by counsel, testified at the hearing. [Id.]. On January 3, 2018, the ALJ found that Myers was not disabled. [R. 21]. The SSA Appeals Council denied Myers' Request for Review on July 31, 2018. [R. 1]. Myers filed his complaint with the Court on January 2, 2019, seeking review of the Commissioner's decision pursuant to section 205(g) of the Act. [ECF No. 1].

**C.     Factual Background**

Myers has suffered from chronic neck pain since 2008, when his car was hit from behind by another vehicle while he was stopped at a red light. [R. 70, 456]. He is also obese and has undergone a number of knee surgeries. [R. 727]. He was fifty-nine years old when the ALJ's decision was issued. [R. 112].

Myers has an associate degree in general studies from North Shore Community College. [R. 58]. Between 1996 and 2000, he owned and operated a kiosk selling photographs at the mall. [R. 62]. Beginning in 2006, he occasionally worked in network marketing, [R. 63], but

---

[1] References to pages in the Administrative Record, which were filed electronically, [ECF No. 10], are cited as "[R. __ ]."

predominantly relied on his wife's income as a legal secretary, [R. 64]. In 2006, he became a manager at a Select Comfort mattress store. [R. 66].

In 2012, he started working as a fruit cutter at a Shaw's Supermarket, [R. 71], where he would also work occasionally as a night manager, [R. 73]. While at work on June 17, 2015, he tore his rotator cuff and ruptured his bicep tendons as he was getting up from reaching under a counter. [R. 727]. Since the injury, he has not been gainfully employed. [R. 75].

**D.  Medical Evidence**

Myers had been treated for several medical conditions before the shoulder injury that precipitated this application, including five knee injuries between 1977 to 2013, [R. 727, 392], a diagnosis of atrial fibrillation in 2011 which resurfaced in 2016, [R. 476], cortisone shots for trigger finger on his right hand in 2014, [R. 400], and surgery for carpal tunnel syndrome in 2012. [R. 635]. He also suffers from high blood pressure, type II diabetes, and obesity. [R. 418–19, 479].

On May 18, 2008, Myers was in a car accident which left him with chronic neck pain. [R. 337]. Despite a surgery in 2010 to repair his injured neck, he has continued to suffer from pain and was eventually diagnosed with post-laminectomy syndrome in 2016. [R. 637–38]. He was also prescribed Oxycodone and Percocet and has been on pain medication since the surgery. [R. 337, 727]. In addition, he was diagnosed with vertigo two days after the accident, which resolved itself ten months later. [R. 754].

While at work on June 17, 2015, Myers felt his left shoulder pop as he rose from a kneeling position after reaching for something under a counter. [R. 727]. That afternoon, he visited an emergency clinic and was diagnosed with an injured rotator cuff. [Id.]. On June 18, 2015, he visited Sports Medicine North, where Dr. James O'Holleran prescribed a physical

4

therapy regime, which restricted him from overhead lifting and lifting anything above five pounds. [R. 727]. Though treatment notes from his first visits showed early signs of improvement, later reports noted consistent and worsening pain. [R. 376–81].

On June 29, 2015, Myers visited Lahey Health for a follow-up examination by Nurse Practitioner Gretchen Keohane. [R. 644]. Myers requested new pain medication to replace Percocet, which he had been using since the 2008 car accident. He told Keohane that his current prescription was insufficient to reduce the increased pain from his shoulder injury. [Id.]. He was prescribed a new drug on July 6, but returned to Percocet shortly after. [R. 650]. During these visits, his physical examinations showed no symptoms or conditions other than neck and shoulder pain. [R. 643–50].

An MRI scan on July 21, 2015, showed that Myers had torn his rotator cuff and ruptured his bicep resulting from the June shoulder injury. [R. 383]. The diagnosis also showed, among other conditions, severe arthritis in his AC joint. [Id.].

On September 10, 2015, Myers had surgery to repair his shoulder and biceps. [R. 409]. In a post-operative visit on September 24, 2015, Dr. O'Holleran wrote that Myers' condition was improving and that he had returned to work. [R. 409]. Myers also informed Dr. Agnes Jimenez on a subsequent September 28 visit to Lahey Health that he was "feeling better" after the surgery. [R. 663]. At a follow-up visit on November 4, 2015, Myers reported being out of work, but feeling better, and that he was attending physical therapy. [R. 410].

On November 16, 2015, Myers returned to Sports Medicine North with a flare up of shoulder pain. [R. 411]. Dr. O'Holleran did not diagnose any new injuries or infections and recommended a steroid taper. He told Myers to return for a follow up in six weeks. [R. 411].

On December 23, 2015, Dr. O'Holleran noted that the Myers was "doing well" and that his pain was "well-controlled." [R. 412].

A few days later, on December 29, 2015, Myers gave a conflicting report to Dr. Jimenez at Lahey Health. [R. 415]. Myers reported feeling "depressed from the tremendous amount of pain." [Id.]. He also said that he had not been able to sleep through the night since his surgery and was experiencing recurring atrial fibrillation. [Id.]. Dr. Jimenez examined Myers and determined that he was unable to move his arms to the side and was experiencing tenderness around his neck that radiated to his shoulders. [Id.]. At the next physical therapy session on January 20, 2016, however, Dr. O'Holleran noted Myers' "slow but steady gains" and cleared him to return to work for light duty. [R. 423]. Myers did not submit any records from Sports Medicine North after the evaluation, and there is no indication in the record that he returned to light work.

At around this same time, Myers began seeing Dr. Minesh Patel at North Shore Pain Management for increasing neck pain. In his first visit, on January 6, 2016, Myers reported a "constant and burning type of pain," rating it between 7/10 and 10/10. [R. 635]. On evaluation, Myers complained of fatigue, cardiovascular palpitations, decreased libido, sleep problems, mood swings, depressed mood, suicidal thoughts, increased irritability/anger, and decreased cold tolerance. [R. 637–38]. He also showed 5/5 motor strength in the right upper extremity and 4+/5 in his left upper extremity. [Id.]. Dr. Patel diagnosed him with post-laminectomy syndrome, cervicalgia, and long-term use of opiate analgesic, and ordered a plan of injection therapy and medication. [Id.].

In February 2016, Myers had medial branch blocks on his neck at the recommendation of Dr. Patel. [R. 622, 618]. On February 25, Dr. Patel noted that Myers did not seem to be

6

showing signs of improvement after the injections. [R. 613]. From April to December, Myers visited Dr. Patel once a month for routine follow-ups. [R. 598–608]. Through June, he reported a constant pain level of 8/10 which showed no signs of improvement. [Id.].

On July 11, 2016, Myers returned to Dr. Patel after switching to Methadone and reported a pain level of 3/10. [R. 593]. He continued to report a pain level of 3/10 during his August and September visits to Dr. Patel. [R. 588, 583]. In her reports, Dr. Patel noted that Myers was experiencing mild daytime fatigue, but no somnolence as a side effect of the Methadone. [Id.]. In October 2016, however, Myers began to report daytime somnolence, explaining that he napped two to three hours every day. [R. 578].

On November 14, 2016, Myers visited Dr. Patel again and reported "increasing symptoms of mental fogginess, blurred vision, diaphoresis and daytime sedation associated with methadone" taken three times a day. [R. 576]. Myers reported feeling "significant increased pain" when he tried reducing his medication intake to twice a day. [Id.].

On December 21, 2016, Myers returned to Dr. Patel again after noticing a "loud cracking sound" from his neck when he was working with his brother the week before. [R. 559]. At the time he reported an increased pain level of 7, partly as a result of a change in medication due to the side effects as noted in his previous visit. [R. 565]. Dr. Patel also noted having reviewed again the importance of strict medication adherence and prescribed a Narcan spray. [R. 559].

On January 13, 2017, Myers underwent surgery to implant a spinal stimulator. [R. 549]. After a fever, increased pain, and subsequent reprogramming of the device, Myers reported less pain on February 06, 2017. [R. 537]. At a follow-up visit on February 16, 2017, he reported variable relief and feeling intermittent paresthesia in his leg. [R. 543]. On April 12, 2017, Dr. Patel reported concerns with opioid misuse and referred him to North Shore Counseling for

7

relaxation training, stress reduction, and coping mechanisms for chronic pain. [R. 518]. On a May 24 visit, Dr. Patel confirmed that Myers had transitioned to OxyContin, reporting a 4/10 level of pain. [R. 526].

Since Myers' application for disability benefits, four state-appointed medical consultants have analyzed his medical record. First, on December 7, 2015, he was evaluated by Drs. J. Singh and S. Gupta. Dr. Singh concluded that the rotator cuff tear and biceps rupture were severe, but that the strained back and obesity were non-severe. [R. 117–18]. On the same evaluation, Dr. S. Gupta noted that Myers' shoulder pain was improving, [R. 118], but determined that he was disabled. [R. 122]. Second, on February 9, 2016, Dr. Richard Goulding concluded that Myers could occasionally lift weights of twenty pounds, frequently weights of ten pounds, stand for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. [R. 131–32]. Dr. Goulding also reported that Myers had limited pushing and/or pulling abilities in the left upper extremities, as well as limited overhead lifting in the left upper extremities. [Id.]. Dr. Goulding did not assign any limitations on Myers' handling, fingering, or feeling. [R. 133]. Third, on March 29, 2016, Dr. Elaine Horn confirmed the limitations assigned by Dr. Goulding, though she did note his worsening pain as noted in his medical records. [R. 142–43].

On Myers' first visit to North Shore Counseling on May 30, 2017, he was diagnosed with recurrent moderate Major Depressive Disorder (MDD) related to his chronic pain, cosigned by Dr. Nechal Tejwani. [R. 724]. The counseling record also noted that, despite his spinal stimulator implant, he was still feeling acute chronic pain. [Id.]. On June 21, Myers also visited Beverly Hospital for a lumbar puncture and myelogram procedure to assess his pain. [R. 738].

8

The record includes further observations in recovery, but no evidence of any follow-up discussion was submitted. [Id.].

On June 27, 2017, Myers visited Lahey Health for a physical residual functional capacity assessment as required by the application for disability benefits. Nurse Practitioner Rubin determined that Myers could occasionally lift less than ten pounds, frequently lift less than ten pounds, stand and/or walk for less than two hours in an eight-hour work day, sit for less than six hours (with a note claiming best to alternate sitting and lying down), and had limited capacity to push and/or pull in both the upper and lower extremities. [R. 710]. Rubin did not record any postural limitations. [R. 712]. She recorded all manipulative limitations, noting that paresthesia on both hands and fingers prevented full feeling and handling. [Id.]. She also found that Myers should "avoid even moderate exposure" to extreme cold, extreme heat, wetness, humidity, noise, vibration, and hazards including machinery and heights because they would "severely impact his pain and ability to function." [R. 713]. Dr. Ezzi cosigned the assessment. [R. 716].

Myers' last submitted medical record was a July 13, 2017 letter from the Beth Israel Deaconess Medical Center noting his sudden onset of vertigo in May 2017. [R. 754]. Myers' new episode was precipitated by a "popping sensation in the neck" as he was reaching for something on a high shelf with his right arm. [Id.]. In addition to the evaluation of vertigo, the general examination showed a fully awake, alert neurological state, 5/5 power in major muscle groups without tremor/drift/asterixis, and sensation intact to light touch and vibration in four extremities. [R. 756].

## II. THE ALJ'S DECISION

On January 3, 2018, the ALJ found that Myers was not disabled under sections 216(i) and 223(d) of the Act. [R. 45]. At step one, the ALJ found that Myers "did not engage in substantial

9

gainful activity during the period from his alleged onset date of June 17, 2015 through his date last insured of March 31, 2017." [R. 27].

At step two, the ALJ determined that Myers had severe impairments of cervical degenerative disc disease, status post-fusion with post-laminectomy syndrome, left rotator cuff tear and biceps tear, status post-repair, and obesity. [Id.]. At step three, he found that "the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." [R. 31]. The ALJ ruled that Myers' residual functional capacity, defined as "his ability to do physical and mental work activities on a sustained basis" was intact for performing light work with certain limitations. [R. 32]. Myers' limitations include being able to: "stand and/or walk for 4 hours over the course of an 8-hour workday," "occasionally climb ramps and stairs, but never ladders, ropes and scaffolds," "occasionally balance, stoop, kneel, crouch and crawl," and "occasionally reach vertically or push and/or pull with his bilateral upper extremities." [R. 32]. He "must avoid concentrated exposure to unprotected heights." [Id.]. From this analysis, the ALJ found that he was "capable of performing past relevant work as a fruit cutter as generally performed." [R. 42]. The ALJ concluded that "the Claimant was not under a disability, as defined in the Social Security Act . . . ." [R. 45].

## III. STANDARD OF REVIEW

The Court has jurisdiction pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g). Section 205(g) provides that an individual may obtain judicial review of a final decision of the Commissioner of Social Security by instituting a civil action in federal district court. See 42 U.S.C. § 405(g). The Court may take a number of actions with respect to the Commissioner's

decision. First, under sentence four of Section 205(g), the Court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." Id. A court's decision under sentence four, however, can be based only on a review of the administrative record of proceedings before the Commissioner. See Whitzell v. Astrue, 792 F. Supp. 2d 143, 147 (D. Mass. 2011) (quoting 42 U.S.C. § 405(g)). If a claimant presents new evidence to the Court that was not contained within the administrative record, the Court may not consider it. "If additional evidence is to be considered, it must be by way of remand[]" pursuant to sentence six of section 205(g). Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1503 (10th Cir. 1992). Sentence six permits the court to remand a case to the Commissioner for further proceedings and order the evidence to be added to the record for consideration. See 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

Under section 205(g), sentence four, this Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). In conducting such review, the Court must defer to the Commissioner's factual findings, so long as such findings are "supported by substantial evidence," but the Court's review of the Commissioner's conclusions of law is *de novo*. Id.; see also Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence . . . but are not conclusive when derived by ignoring evidence, misapplying the law, or

judging matters entrusted to experts."). Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court "must affirm the [Commissioner's] resolution, *even if the record arguably could justify a different conclusion*, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (emphasis added) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)).

## IV. DISCUSSION

Myers argues that the ALJ's Decision should be reversed and remanded for two reasons: (1) Myers' past relevant work as a kitchen helper/night manager was a composite job, such that the ALJ was barred as a matter of law from issuing a denial at step four and finding that he was capable of performing past relevant work as a fruit cutter as generally performed; and (2) the ALJ was not properly appointed under the Constitution and, therefore, lacked legal authority to hear and decide the case. [ECF No. 12 at 3–12]. In response, the Commissioner asserts, first, that Myers waived the argument that the ALJ mischaracterized his past relevant work by not raising it before the ALJ. [2] [ECF No. 14 at 5–7]. Second, the Commissioner argues that Myers also failed to raise his appointment clause claim to the agency in the administrative process, waiving this claim as well. [ECF No. 14 at 12–20]. The Court agrees with the Commissioner

---

[2] The Commissioner argues that even if the Court finds that the issue is not waived, the ALJ properly determined that Claimant could perform his past relevant work as a fruit cutter as generally performed. [ECF No. 14 at 7–12]. Because the Court finds that this issueis waived, the Court does not need to address this argument.

that both of Myers' arguments are waived. The motion to reverse and remand, [ECF No. 11], is therefore DENIED and the motion to affirm, [ECF No. 13], is <u>GRANTED</u>.

### A. The ALJ's Determination that Myers Could Perform His Past Relevant Work as Generally Performed

The ALJ denied Myers' claim at step four of his evaluation because he found that Myers could perform his past job as a fruit cutter as generally performed in the national economy. [ECF No. 10-2 at 43–46]. A fruit cutter "is defined in the Dictionary of Occupational Titles (DOT) at 521.687-066, as an unskilled occupation with an SVP of 1." [<u>Id.</u> at 44.] Myers argues that his past relevant work as a fruit cutter at Shaw's Supermarkets should have been classified as a "composite job," and that the DOT definition of "fruit cutter" did not accurately describe his job at Shaw's. [ECF 12 at 3–8].

Under 20 C.F.R. § 416.920, ALJs must consider, at step four, their "assessment of [the claimant's] residual functional capacity and [his] past relevant work." 20 C.F.R. § 416.920 (a)(4)(iv). If the claimant is still able to perform his past relevant work, then he is not disabled within the meaning of the regulation. <u>Id.</u> "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work . . . as generally performed in the national economy." 20 C.F.R. § 416.960. According to the SSA's Program Operations Manual System ("POMS"), composite jobs do "not have a DOT counterpart" and therefore should not be evaluated as part of the step four consideration of work "generally performed in the national economy." SSA POMS DI 25005.020.

The Commissioner argues that Myers has waived his argument that the ALJ mischaracterized his past relevant work because he failed to raise the argument before the ALJ. [ECF No. 14 at 5–7]. "The First Circuit has held that objections not presented to the ALJ are

waived." Holmes v. Colvin, No. 16-cv-10139, 2016 WL 7410775, at *11 (D. Mass. Dec. 22, 2016) (citing Soto-Cedeño v. Astrue, 380 F. App'x 1, 4–5 (1st Cir. June 29, 2010)). "[A]n applicant for Social Security disability benefits must raise any challenge to a hearing officer's analysis to the hearing officer or the Appeals Council in order to preserve the challenge for review by the district court." Cameron v. Berryhill, 356 F. Supp. 3d 186, 192 (D. Mass. 2019) (citing Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001)). Though Myers raised his objections to the DOT characterization before the Appeals Council, [ECF No. 12 at 3–8], he does not claim that he presented these arguments before the ALJ, [ECF No. 10-6 at 89–93].

The First Circuit has not determined whether an argument must be brought before the Appeals Council in order for a claimant to raise the argument before the district court. "[F]ailing to raise an issue at the Appeals Council level *probably* does not debar a claim that the ALJ erred." Mills, 244 F.3d at 8 (emphasis added). If a claimant fails to raise the argument before the ALJ, however, then the issue is waived before the district court. In Mills, the First Circuit explicitly declined to extend a no waiver approach "to the failure of an applicant to raise an issue at the ALJ level." Id. (citing Sims v. Apfel, 530 U.S. 103, 117, 120 (2000) (Breyer, J., dissenting)). In this case, Myers failed to raise this argument before the ALJ. Therefore, the issue is waived for purposes of his appeal.

**B.     The Legal Authority of the ALJ to Hear and Decide This Case**

Myers argues that the ALJ in this case was not properly appointed under the Constitution's Appointments Clause at the time of his hearing, and therefore did not have the legal authority to issue its decision. [ECF No. 12 at 8]. The Commissioner does not address the merits of this claim, but instead argues that because Myers did not raise the Appointments Clause during the administrative proceedings, the claim has been forfeited. [ECF No. 14 at 13].

14

In Lucia v. Securities and Exchange Commission, the Supreme Court held that ALJs in the SEC exercised "significant discretion" in carrying out "important functions" and were therefore required, under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, to have been appointed by the President, a court of law, or a head of a department. 138 S. Ct. 2044, 2047–48 (2018) (quoting Freytag v. Comm'r, 501 U.S. 868, 878 (1991)). The First Circuit has explained that "[a]dministrative law judges are 'Officers of the United States,' in part, because they can receive evidence at hearings and administer oaths." Aurelius Inv., LLC v. Puerto Rico, 915 F.3d 838, 857 (1st Cir. 2019) (citing Lucia, 138 S. Ct. at 2053), cert. granted sub nom. Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC, 139 S. Ct. 2735 (2019).[3] Though Lucia concerned ALJs in the SEC, see Lucia, 138 S. Ct. at 2051, as a precautionary measure the Acting Commissioner of Social Security reappointed the agency's administrative judges, including both ALJs and Administrative Appeals Judges, under her own authority on July 16, 2018. See Social Security Emergency Message 18003 REV 2, § B.

The SSA has explained that "[c]hallenges to an ALJ's authority to decide a claim may raise a broadly applicable procedural issue independent of the merits of the individual claim for benefits—that is, whether the ALJ who presided over the claimant's hearing was properly

---

[3] The Supreme Court granted certiorari in June 2019 to consider whether members of the Financial Oversight and Management Board of Puerto Rico may act with binding authority under the *de facto* officer doctrine, despite the fact that the First Circuit found that the members have occupied their offices in violation of the Appointments Clause. See generally Petition for a Writ of Certiorari, Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC, 139 S. Ct. 2735 (2019) (No. 18-1475). Oral arguments took place in October 2019, and a decision is pending. Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC, No. 18-1334 (U.S. argued Oct. 15, 2019). Until that opinion issues and indicates otherwise, the First Circuit's opinion in Aurelius Inv., LLC v. Puerto Rico remains governing case law for the First Circuit on this issue. The Court notes, however, that the Supreme Court's decision in that case would be of little consequence in reviewing Myers' petition as the Court does not rely on the *de facto* officer doctrine.

appointed under the Appointments Clause of the Constitution." SSR 19-1P, 2019 WL 1324866, at *3 (Mar. 15, 2019). The Appeals Council will grant a claimant's request for review if (1) the ALJ's decision was issued before July 16, 2018, when the Commissioner reappointed the agency's ALJs, and (2) the claimant raises an Appointments Clause challenge that was either presented to the ALJ or the Appeals Council. Id.

Courts are presently divided over whether claimants who are appealing ALJ decisions issued before July 16, 2018, could have waived their Appointments Clause arguments. The Third Circuit has held that claimants are not required to raise their Appointments Clause arguments during the administrative process in order to preserve the argument for appeal. See Cirko ex rel. Cirko v. Comm'r of Soc. Sec., 948 F.3d 148, 152 (3d Cir. 2020). The court found that "there is little legitimate governmental interest in requiring exhaustion" due to the relatively few cases that could assert this Lucia defense, and remanded the cases at issue to "constitutionally appointed ALJs other than those who presided over Appellees' first hearings." Id. at 159 ("[E]very claimant whose benefits were denied prior to Lucia has long since either filed an appeal in district court or become time-barred from doing so.").

Since the Third Circuit made its decision, however, "district courts across the country have declined to follow its holding." Griffin v. Comm'r of Soc. Sec., No. 18-cv-85, 2020 WL 733886, at *10 (N.D. Iowa Feb. 13, 2020); see Streich v. Berryhill, No. 3:18-cv-01977, 2020 WL 563373, at *2–3 (D. Conn. Feb. 5, 2020); Ricks v. Comm'r of Soc. Sec., No. 18-1097, 2020 WL 488285, at *3–*4 (M.D. La. Jan. 30, 2020); Ramazetti v. Comm'r of Soc. Sec., No. 8:19-cv-260, 2020 WL 428950, at *8 (M.D. Fla. Jan. 28, 2020); Olson v. Comm'r of Soc. Sec., No. 2:19-CV-273, 2020 WL 831579, at *6 (M.D. Fla. Feb. 20, 2020). "Furthermore, prior to Cirko being filed, the vast majority of district courts across the country agree[d] with this court's reasoning."

16

Griffin, 2020 WL 733886, at *10 (collecting cases). Though the First Circuit has yet to consider whether a claimant may waive an Appointments Clause argument by failing to present it to the ALJ, district courts in this Circuit have rejected the argument and found that a claimant may waive an Appointments Clause claim. See Phillip W. v. Saul, No. 2:19-cv-00258, 2020 WL 68301, at *2 (D. Me. Jan. 7, 2020) ("In this District and in many other districts, a party is deemed to have waived the ability to challenge the authority of the presiding ALJ under Lucia if the challenge is not raised at the administrative level."); Christy A. L. v. Saul, No. 2:18-cv-00260, 2019 WL 2524766, at *3 (D. Me. June 19, 2019), report and recommendation adopted sub nom. Christy A. L. v. Soc. Sec. Admin. Comm'r, No. 2:18-cv-00260, 2019 WL 3459227 (D. Me. July 30, 2019) (noting that "[t]he vast majority of [district] courts recently have ruled that a social security claimant may not raise an appointments clause challenge for the first time upon appeal to a federal court" (internal quotation marks and citations omitted)).[4]

As previously discussed, the First Circuit has narrowly applied no-waiver approaches in the Social Security appeal process. Though "[t]he impact of a no-waiver approach at the Appeals Council level is relatively mild[,] at the ALJ level it could cause havoc, severely undermining the administrative process." Mills, 244 F.3d at 8. The First Circuit has expressly stated that it has "no intention of extending this [no-waiver] rule . . . to the failure of an applicant to raise an issue at the ALJ level." Id.

---

[4] Though a district court in New Hampshire was presented with the issue of whether a claimant waives an Appointments Clause claim by failing to present it during the administrative process, it remanded on other issues and declined to rule on the issue. See Ulitsch v. Comm'r of U.S. Soc. Sec. Admin., No. 18-cv-694, 2019 WL 4686776, at *5 (D.N.H. Sept. 26, 2019) ("Because the court grants [claimant's] first motion, it does not reach the issue raised by [his] second motion concerning whether the ALJ was properly appointed under the Constitution.").

At no point in the administrative process—his initial application for benefits, on reconsideration, his hearing before the ALJ, or before the Appeals Council—did Myers present the argument that the Social Security Administration's ALJs were inferior officers under the Appointments Clause and therefore lacked legal authority to hear his case. With the First Circuit's opinion in Mills, 244 F.3d at 8, as guidance, the Court joins other courts in this Circuit in concluding that Myers has waived his Appointments Clause argument by failing to present it during the administrative process.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, the Court finds that Myers has waived his arguments regarding whether the ALJ properly found him not disabled and whether the hearing officer had authority to hear his case by failing to raise these arguments during the administrative process. Myers' motion to reverse and remand, [ECF No. 11], is therefore DENIED and the Commissioner's motion to affirm, [ECF No. 13], is GRANTED.

**SO ORDERED.**

March 30, 2020  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE